TAYLOR, Judge.
The appellant, A.M., a juvenile, was charged in three delinquency petitions with receiving stolen property in the second degree, in violation of § 13A-8-18, Code of Alabama 1975; carrying a pistol on premises not his own, in violation of § 13A-11-52, Code of Alabama 1975; and first degree burglary, in violation of § 13A-7-5, Code of Alabama 1975. The state filed a petition to transfer the appellant’s three cases to the Circuit Court for Jefferson County so that the appellant could stand trial as an adult. The court granted the state’s petition. The current appeal is from the court’s transfer order.
The charges against the appellant stem from two separate fact situations. The evidence presented at the transfer hearing concerning the charge of first degree burglary tended to show that on June 29,1992, Detective David Smith, of the Birmingham Police Department, was called to 544 Francis Place in the West End area in response to a burglary-in-progress call reported by Larry Underwood. When Smith reached the area, he saw the appellant and another black male run across the street in front of his vehicle. The youths ran onto the appellant’s front porch and sat down. Smith then turned his attention in the direction from which the youths had run. He spotted two large stereo speakers on the ground next to an abandoned house. When he looked back to the porch where the appellant and the other youth had sat down, they were gone.
Smith then called Larry Underwood, who came to the scene and identified the stereo speakers as his. The speakers were fingerprinted at the scene by police technicians. The appellant’s fingerprints were found on the speakers.
*423 At the house from which the speakers had been taken, the burglar bars had been pried off a back window and a door. After searching the house, Underwood realized that his RG .38 caliber revolver was also missing.
On July 7, 1992, Detective Smith questioned the appellant about the missing revolver at the Jefferson County Youth Detention Facility, where the appellant was being held in connection with the receiving stolen property and burglary charges. Smith’s testimony indicated that during that interview, the appellant confessed his involvement in the burglary at the Underwood residence and acknowledged the fact that the speakers and the pistol had been stolen.
The appellant testified that he was not in the West End section of Birmingham on June 29,1992, and he denied running in front, of Detective Smith’s car. The appellant also testified that his fingerprints were found on the stereo speakers only because he had touched them on an earlier occasion when he was in Underwood’s house.
The series of events that led to the receiving stolen property charge and the weapons charge occurred on July 6, 1992. On this date, Roderick Sigler reported that someone had broken into his house. The stolen items included two gold necklaces, a diamond ring, a gold watch, a coin ring, two beeper/pagers, a pair of gold suede shoes, and two baseball caps. He valued the hats at $10 each, the gold necklaces at $220, and one of the beeper/pagers at $300. Later on that same day, Sigler saw the appellant and another black youth walking down the street. They were wearing the stolen baseball caps'. Sigler drove up next to them and began to talk to the youths. Sigler noticed that the appellant also was carrying one of the stolen beeper/pagers.
After his conversation with the youths, Sigler telephoned the police. Detective Smith arrived within 20 minutes and arrested the appellant outside of the Krispy Kreme doughnut shop in the 2200 block of Bessemer Road. During the arrest, Smith recovered one of the gold necklaces, along with one of the beeper/pagers, and a baseball cap. Smith also recovered a .38 caliber revolver, which the appellant had tucked in the waistband of his pants. The record indicates that this was the same revolver reported stolen from Larry Underwood on June 29, 1992. Smith testified that the appellant did not have a license to carry a concealed weapon. The appellant’s companion was wearing the other baseball cap, along with the coin ring, and the other necklace stolen from Sigler’s house.
The appellant testified that he and his companion bought the hats and the jewelry from two people on Fulton Avenue approximately two hours before his arrest. He stated that he and his companion each paid $20 for the hats and the jewelry. He further testified that he had no idea that the hats and the jewelry were stolen.
I
The appellant first contends that the trial court committed reversible error in denying his motion to suppress his extra-judicial statements concerning his involvement in the burglary. Specifically, he argues that, during his interview with Smith, he requested that his attorney be present, but Smith denied his request and continued to question him.
At the suppression hearing, before the transfer hearing, Detective Smith and the appellant testified. Smith testified that, pri- or to questioning the appellant, he read the appellant his Miranda[1] and juvenile rights, according to Rule 11(A), A.R.Juv.P., and that the appellant signed a waiver of rights form. Smith stated that the appellant appeared nervous during the interview, but that he appeared to understand his rights. He further stated that no one made any promises or threats to the appellant before taking his statement, and no one told the appellant that it would be either better or worse for him if he gave a statement. Further, Smith testified that the appellant told him that he did not have an attorney, and that he did not wish to speak to either an attorney or his parents.
*424 Smith testified that the appellant then confessed his participation in the burglary. Smith said that the appellant first began to write a statement, but, because he was having difficulty with spelling, the appellant gave an oral confession, and Smith wrote down what the appellant said. The appellant told Smith that he did not go in Underwood’s house and that he was merely a lookout at the time of the burglary. Smith stated that the appellant also told him that he later received the stolen pistol from one of his companions.
The appellant testified, during the suppression hearing, that he was read his rights, that he understood that he could request the presence of both an attorney and his parents, and that he had signed the waiver of rights form. He testified, however, that he had given Smith the name of his attorney, and had told Smith that he wished to see him. He also testified that Smith told him that it would be easier on him if he would talk to Smith.
The general rule is that “‘[ejxtrajudieial confessions are prima facie involuntary and inadmissible, and the burden is on the State to prove that the confession was made voluntarily.’ ” Ex parte Weeks, 531 So.2d 643, 644 (Ala.1988), quoting Ex parte Callahan, 471 So.2d 463, 464 (Ala.1985). “Before an accused’s confession can be received into evidence, the state must show that the statement was voluntary, that the accused was read his Miranda rights, and that he waived them.” Franklin v. State, 621 So.2d 364 (Ala.Cr.App.1992). See also Whitlow v. State, 509 So.2d 252 (Ala.Cr.App.1987). However, to receive a confession into evidence, “[t]he trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made.” Jackson v. State, 562 So.2d 1373 (Ala.Cr.App.1990). See also Ex parte McCary, 528 So.2d 1133 (Ala.1988).
The trial court found that the appellant’s statement was voluntary. “ ‘A finding of the trial court as to the voluntariness of a confession, following a hearing outside the presence of the jury, will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong.’ ” Griffin v. State, 500 So.2d 83, 87 (Ala.Cr.App.1986), quoting Rush v. State, 397 So.2d 195, 197 (Ala.Cr.App.), writ denied, 397 So.2d 197 (Ala.1981). See also Johnson v. State, 611 So.2d 506 (Ala.Cr.App.1992).
The appellant and Detective Smith presented conflicting testimony at the suppression hearing. The trial court, sitting as the trier of fact, chose to believe Smith. We find that there was ample evidence presented from which the trial court could determine, by a preponderance of the evidence, that Smith had read the appellant his juvenile rights, that the appellant had waived his rights, and that he then gave a voluntary confession.
The appellant also argues that he was coerced by Detective Smith into making a confession. “The question of undue influence in obtaining admissions or confessions is determined by an examination of all attendant circumstances, with the inquiry focusing on whether the accused’s free will and rational intellect were overborne at the time of his confession.” Siebert v. State, 555 So.2d 772, 776 (Ala.Cr.App.), aff'd, 555 So.2d 780 (1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See also Hubbard v. State, 500 So.2d 1204, 1220 (Ala.Cr.App.), aff'd, 500 So.2d 1231 (Ala.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987).
The trial court found Detective Smith’s testimony believable and the appellant’s testimony unbelievable. The trial court’s denial of the appellant’s motion to suppress was not error. The statements made by the appellant were correctly received into evidence.
II
The appellant next contends that there was not sufficient probable cause to show that he committed the offense of receiving stolen property in the second degree.
Section 13A-8-16(a), Code of Alabama 1975, states:
“(a) A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has *425 been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.”
A person commits the crime of receiving stolen property in the second degree if the stolen property “exceeds $100.00 in value but does not exceed $1,000.00 in value.” § 13A-8-18, Code of Alabama 1975. The “possession of recently stolen goods raises a presumption that the defendant had the requisite ‘knowledge’ [that the goods were stolen].” Smith v. State, 557 So.2d 1822, 1324 (Ala.Cr.App.1989), quoting Goodman v. State, 401 So.2d 208, 210 (Ala.Cr.App.), cert. denied, 401 So.2d 213 (Ala.1981). See also § 13A-8-16(b), Code of Alabama 1975.
Here, it was uncontroverted that the items in question were stolen and that the value of the items was between $100 and $1000. The appellant and his companion were in possession of the stolen items later on the same day that the items were stolen. There was sufficient evidence presented from which the trial court could find probable cause that the appellant committed the offense of receiving stolen property in the second degree. The trial court’s finding of probable cause is not “clearly erroneous.” Williams v. State, 361 So.2d 1157 (Ala.1978). See also Slaton v. State, 555 So.2d 814 (Ala.Cr.App.1989).
Ill
The appellant also contends that Detective Smith and the accompanying police officer did not have probable cause to stop and search him at the Krispy Kreme doughnut shop, and, therefore, the stolen pistol should not have been received into evidence. This issue is being raised for the first time on appeal.
“In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated and a ruling on the objection must be made by the trial court.” Goodson v. State, 540 So.2d 789, 791 (Ala.Cr.App.1988). See also Wood v. State, 416 So.2d 794 (Ala.Cr.App.1982). “We cannot consider matters on appeal which have not first been presented to the trial court.”
Carpenter v. State, 581 So.2d 1277, 1279 (Ala.Cr.App.1991).
Even if this issue had been preserved for our consideration, we conclude that Detective Smith had sufficient probable cause to stop the appellant. Roderick Sigler saw the appellant and his companion, both of whom were wearing items that were stolen from his house. After the police arrived, Sigler identified the appellant as the individual who was in possession of property that had been stolen from him. At this point, Detective Smith had sufficient probable cause to arrest the appellant. The later search of the appellant was lawful as incident to that arrest. Gouin v. State, 581 So.2d 1279 (Ala.Cr.App.1991).
IY
Last, the appellant contends that the trial court abused its discretion when it transferred him to circuit court to stand trial as an adult because, he says, it was not in his “best interest” to transfer him out of the juvenile system.
Transfer hearings are divided into two phases, a probable cause phase and a disposi-tional phase. § 12-15-34, Code of Alabama 1975. See J.S.A. v. State, 615 So.2d 1288 (Ala.Cr.App.1993). As discussed above, there was sufficient probable cause to show that the appellant committed the crime of receiving stolen property in the second degree. The appellant does not contest the court’s finding of probable cause as to the burglary charge and the weapons charge. Therefore, our focus turns to the dispositional phase of the transfer hearing. The trial court’s reasons for transferring the appellant on all three charges to circuit court are identical.
During the dispositional phase of the transfer hearing, the trial court must consider the factors enumerated in § 12—15—34(d), Code of Alabama 1975. Jelks v. State, 522 So.2d 11 (Aa.Cr.App.1988). Subsection (d) states:
“(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
*426 “(1) The nature of the present alleged offense;
“(2) The extent and nature of the child’s prior delinquency record;
“(3) The nature of past treatment efforts and the nature of the child’s response to such efforts;
“(4) Demeanor;
“(5) The extent and nature of the child’s physical and mental maturity; and
“(6) The interests of the community and of the child requiring that the child be placed under legal' restraint or discipline.”
The weight to be accorded each factor, in balancing the interests of the juvenile against the interests of society, must be left to the sound discretion of the juvenile court judge. Palmer v. State, 486 So.2d 1247 (Ala.Cr.App.1986). The weighing of the six statutory factors and other considerations in determining whether a juvenile should be transferred from the juvenile court to the circuit court for prosecution as an adult does not involve the mere tallying of the circumstances for numerical comparison; rather, it is a balancing and weighing process wherein one statutory factor may outweigh the remaining five statutory factors. N.D.T. v. State, 692 So.2d 647 (Ala.Cr.App.1991). The juvenile court need not make a specific finding as to each of the six factors to be considered under § 12 — 15—34(d). The court’s order must contain some statement that all the factors were considered, in order for this court to determine that the statutory requirements of the statute have been met. Taylor v. State, 507 So.2d 1034 (Ala.Cr.App.1987). If the transferring court, states that all six factors of 12-15-34(d) have been considered, then its order complies with the rules. C.C. v. State, 586 So.2d 1018 (Ala.Cr.App.1991).
The dispositional phase of the transfer hearing is controlled by a “clear and convincing” standard of proof. W.T.K. v. State, 598 So.2d 33 (Ala.Cr.App.1992), cert. denied, — U.S. -, 113 S.Ct. 173, 121 L.Ed.2d 120 (1992). Judge Bowen, speaking for this court in O.M. v. State, 595 So.2d 514 (Ala.Cr.App.1991), writ quashed, 595 So.2d 528 (Ala.1992), adopted the position taken by Justice Kennedy’s dissenting opinion in Ex parte J.R., 582 So.2d 444 (Ala.) (Kennedy, J., dissenting), cert. denied, — U.S. -, 112 S.Ct. 122, 116 L.Ed.2d 90 (1991). Justice Kennedy’s dissenting opinion interpreted § 12-15-34, Code of Alabama 1975, as requiring “clear and convincing evidence” to support the transfer of a juvenile to circuit court for prosecution as an adult. The opinion stated:
“[A]n appellate court must find, within the record, clear and convincing evidence in order to affirm a juvenile court’s determination at the disposition hearing that it is in the best interest of the child or the public to transfer the child for criminal prosecution.”
582 So.2d at 447.
This court stated, in D.D.P. v. State, 595 So.2d 528 (Ala.Cr.App.1991), that:
“‘Clear and convincing evidence is most easily defined as the evidentiary standard that lies somewhere between a preponderance of evidence and evidence probative beyond a reasonable doubt. Addington ¶. Texas, 441 U.S. 418, 423-24, 99 S.Ct. 1804, 1807-08, 60 L.Ed.2d 323 (1979).’ Matter of K.A., 484 A.2d 992, 995 (D.C.App.1984). See generally 9 J. Wigmore, Evidence § 2498 (Chadbourn rev. 1981); E. Cleary, McCormick on Evidence § 340 (3d ed. 1984); 32A C.J.S. Evidence § 1023 (1964). The standard has been explained as that evidence which convinces the trier of fact that a proposition is ‘highly probable,’ as distinguished from ‘more probable than not.’ McBaine, Burden of Proof: Degrees of Belief, 32 Calif.L.Rev. 242, 253-54 (1944).”
595 So.2d at 538.
The trial court had before it substantial evidence, including testimony from the investigating police officer and the appellant. The trial court also examined the report from the appellant’s probation officer, which indicated that the appellant had been arrested on 21 prior occasions. One of the prior arrests was still pending at the time of the transfer hearing, and the appellant had been transferred to circuit court to stand trial as an adult on *427 that charge. There also was a report from the psychologist who examined the appellant. The court’s transfer order clearly indicates that the court considered all the factors enumerated in § 12-15-34(d), Code of Alabama 1975, in reaching its determination that it would be in the best interest of the appellant and the public to transfer the appellant to circuit court.
Having reviewed the circumstances of this case and the juvenile court’s order under the “clear and convincing” standard of proof, we find no error in the court’s decision to transfer the appellant to circuit court to stand trial as an adult. O.M., supra.
The order of the juvenile court transferring this cause to the Circuit Court for Jefferson County is due to be affirmed.
AFFIRMED.
All the Judges concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).