The appellants, Gordon Adair, Billy Gurley, and Darrell Gene Buckman, were each convicted of burglary in the third degree, a violation of § 13A-7-7, Code of Alabama 1975, and of theft of property in the first degree, a violation of § 13A-8-3, Code of Alabama 1975. The appellants were sentenced to 10 years' imprisonment on each count. Adair's and Gurley's sentences were ordered to run consecutively and Buckman's sentences were ordered to run concurrently.
The evidence presented at trial tended to show that on two occasions in February 1992, the appellants, along with several other men, entered Lloyd and Myra Childs's house in Madison County, Alabama, and took cash and property valued at approximately $60,000. At the time, the Childses were vacationing in Australia for two weeks. Before they left, they secured their valuables in a hidden vault in their basement. They locked the house when they left and did not give anyone permission to enter the house while they were away.
Adair and his wife agreed to feed the Childses' ducks while they were away. This would necessitate the Adairs' going onto the Childses' property but would not necessitate the Adairs' entering the Childses' house. *Page 310 
The Adairs lived nearby and often visited in the Childses' home. Adair was familiar with the Childses' vault and had been shown Mr. Childs's gun collection, which he kept in the vault.
When the Childses returned from their vacation, they discovered that their house had been burglarized and that property had been taken from the vault as well as from other areas of the house. The three appellants, along with Fred Holder and Keith Cullins, were subsequently charged with the burglary. Two of Fred Holder's employees, Connie Sexton and Charles Rutherford, were questioned during the investigation of the crime but were never charged. There was testimony that during the burglary, Sexton and Rutherford waited near the house and helped transport some of the stolen property. They testified that they did not enter the house or keep any property taken from the house.
 I
The appellants argue that there was insufficient evidence to support their convictions for burglary in the third degree and theft of property in the first degree. Specifically, they contend that the only evidence connecting them with these crimes is the uncorroborated trial testimony of Fred Holder, Connie Sexton, and Charles Rutherford, who they contend were accomplices.
Section 12-21-222, Code of Alabama 1975, provides in pertinent part: "[A] conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense." In this case, Fred Holder admitted that he was an accomplice, and the state was therefore required to present evidence corroborating his testimony.
Connie Sexton testified that at the time of the burglary, he was employed as a handyman by Fred Holder in Chattanooga, Tennessee. Sexton said that on February 12, 1992, Holder said to him, "Let's go." Sexton and his son, William, got into Holder's truck and rode with Holder to Madison County, Alabama. Sexton testified that he did not know where they were going when they left Chattanooga and that he did not know that Holder was planning to participate in a burglary. Sexton and Holder travelled to Adair's house in Madison County. There, Sexton said, Holder met with the appellants, and they discussed their plan. According to Sexton, the appellants and Keith Cullins left Adair's house and went to the Childses' house to burglarize it. Sexton then went with Holder to meet the appellants at Buckman's house to take the stolen guns back to Tennessee.
Sexton testified that on February 16, Sexton again went with Holder to Madison County. He said he did not know where they were going when they left Chattanooga. On this trip, more property and a pick-up truck were taken from the Childses' house. Sexton returned to Chattanooga with Holder in the stolen truck. Sexton said that he refused to drive the truck. Once they were in Chattanooga, Holder wanted to dispose of the truck. Sexton refused to burn the truck, but he did abandon it in the parking lot of an apartment complex.
Sexton testified that he did not enter the Childses' house and that he did not take any property from their house. He testified that he was involved because he was with and was following the directions of his employer, Holder. He contended that he did not intend to commit any crime.
Charles Rutherford also testified as a witness for the state. He said that he was a former employee of Holder's at the time of the burglary. He identified the appellants as participants in the crime. He testified that he transported some of the stolen property after it was taken from the Childses' house, but he said that he never entered the house. He explained that he participated in the crime to obtain evidence for the police. He testified that he had been in contact with a Tennessee Bureau of Investigation officer and with the Jackson County, Alabama, sheriff's office and that he had been instructed to work as an undercover informant. This story, however, was never confirmed.
The appellants moved for a judgment of acquittal, contending that Connie Sexton and Charles Rutherford were accomplices and *Page 311 
that their testimony had not been corroborated by other evidence. The court gave the following reasons for denying the appellants' motions:
 "THE COURT: Well, let me tell you all how I think about it. Up through the testimony of Fred Holder, I was firmly of the opinion that all charges would be dropped against Buckman and Gurley and would proceed to trial only against Adair because I saw some, some, but albeit sufficient, circumstantial corroborative evidence to present the charges against Adair to the jury.
 "Then we get Charles Percy Rutherford. Now, my judicial sense tells me that his testimony about being an undercover agent and having no intent to do anything except help law enforcement is tantamount to bovine excrement, but he raises that explanation.
 "Then we get to Connie Sexton. Now, Connie Sexton to me is a classic example of the profound wisdom of the ore tenus rule. I'm glad this jury has gotten to see him and hear him testify because they are going to have to decide whether he was an accomplice or not. I think Connie Sexton takes this case to the jury against all defendants, and also Charles Percy Rutherford is going to have to be pitched in there for the jury, too, because of his statements and explanations.
 "But I base that on Jacks vs. the State, which is the clearest statement of it. There are other cases. Larry [appellant Buckman's counsel] has mentioned it, but, for the record, it's a 1978 decision of the Alabama Court of Criminal Appeals, [reported] at 364 So.2d 397, and on page 403, the Court says that the general rule is, 'If a witness admits his participation with the defendant in the crime,' as did Connie Sexton and Charles Percy Rutherford, 'but seeks by his testimony to explain it and to show his innocent intent, it has been held that a question is presented for the jury.'
 "Now, really, that's why I sustained the objections that Mr. Morgan [defense counsel] made earlier. What this case really is going to come down to is for this jury. The last thing I'll charge them on, as I see it right now, is going to be this element of the case, but that's the first question as to Darrell Buckman and Billy Gurley. I think there's other evidence which I won't comment on to the jury, but it will take Adair into serious consideration, period.
 "But as to Buckman and Gurley, the first question they've got to determine is, particularly as to Connie Sexton, what his intent was. I would have formerly have added knowledge, but he admits that he learned what they were about when they were almost at [Adair's] house and he continued in the scheme, so the question is, what was his intent? Did he entertain the requisite criminal intent? And, if he did, he's an accomplice. And if he's an accomplice, his testimony can't be used without independent corroboration.
 "This case is really going to stand and fall, in my opinion as to Buckman and Gurley on Connie Sexton. There's a little bit of evidence out there, Roy, [appellant Adair's counsel] circumstantial, the ducks and the geese and the statement that Mr. or Mrs. Adair had gone by the house every day. Well, if they did that, they would have seen the door kicked in and the other things done. I mean, there are circumstantial facts out there that would, regardless of what we say about 12-21-222, carry this case over the hump against Adair to that jury."
Whether Connie Sexton and Charles Rutherford were accomplices was in dispute. They both presented testimony attempting to explain their involvement with the crime. Both Sexton and Rutherford admitted that they participated in the crime; however, "[a] 'participant' in a crime is not synonymous with an accomplice." Ex parte Bell, 475 So.2d 609, 613 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
 "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury."
Bell, 475 So.2d at 611-12. Here, both Sexton and Rutherford denied that they were accomplices *Page 312 
in the burglary of the Childses' house. Whether they were accomplices would be a factual issue for the jury's determination.
The court instructed the jury on the law concerning the testimony of an accomplice. The court informed the jury that it must determine whether Connie Sexton or Charles Rutherford was an accomplice. The jury was also instructed that if it found that Sexton and Rutherford were accomplices, then it must find that there was evidence corroborating their testimony in order to find the appellants guilty.
Whether Connie Sexton and Charles Rutherford were accomplices, and, if they were, whether the state presented evidence to corroborate their testimony, were issues of fact for the jury's determination. The jury was correctly instructed of the applicable law. We must assume that the jury applied this law when weighing the evidence. We will not reweigh the evidence and substitute our judgment for that of the jury.Owens v. State, 597 So.2d 734 (Ala.Cr.App. 1992).
 II
Next, the appellants contend that the court's additional charge to the jury, which had indicated it was deadlocked, was impermissibly coercive. The court's lengthy supplemental charge merely urged the jurors to reach a unanimous decision. The court explained that a new trial would be expensive and time consuming. The court also asked the jurors not to be "stubborn." The court never suggested that the jury find any of the appellants guilty or not guilty. The court merely re-emphasized the jury's duty of returning a verdict in the case.
"It is never improper for the Court to urge upon the jury the duty of trying to reach an agreement so long as the Court does not suggest which way the verdict should be returned."Showers v. State, 407 So.2d 169, 170 (Ala. 1981). The appellants contend that the court erred when it implored the jury not to be stubborn. In King v. State, 574 So.2d 921
(Ala.Cr.App. 1990), this court held that a charge that included a similar reference to stubbornness was not impermissibly coercive.
Although the court's charge in this case was not impermissibly coercive, the better practice when charging a deadlocked jury is to use Alabama Pattern Jury Instruction — Criminal I.8, entitled "Hung Jury," which reads as follows:
 "Members of the jury, I am sorry to hear that you are unable to reach a verdict. The Court cannot release you at this time. You should make further efforts to arrive at a verdict. Each juror is entitled to his or her opinion of the evidence, but I know you do not wish to put the State to the expense of another trial if it can be avoided. If you cannot agree a mistrial would be declared and this case would have to be tried again. There is no reason to believe that another jury would have better or clearer evidence than has been presented to you.
 "This does not mean that you should surrender an honest conviction as to the weight or the effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision. But you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If possible, you should resolve any differences and come to a common conclusion so that the case may be completed.
 "I would be happy to give you any explanatory charge on the law.
 "It is natural that differences of opinion will arise. When they do, each juror should not only express his opinion but the facts and reasons upon which he bases that opinion. By reasoning the matter out, it may be possible for all jurors to agree. What I have said to you must not be taken as an attempt on the part of the Court to require or force you to surrender your honest and reasonable convictions founded upon the law and the evidence in this case. My sole purpose is to impress upon you your duty and the desirability and importance of reaching a verdict if you can conscientiously do so.
 "You may retire and continue your deliberations." *Page 313 
In this case, the court's charge urged the jury to return a verdict, but in no way did the court suggest what that verdict should be. The charge was not so coercive as to compel a reversal.
 III
Last, the appellants contend that the court erred in refusing to consider a juror's affidavit to impeach the jury's verdict. The appellant's motion for a new trial was based in part on the affidavit of a juror who claimed that she agreed to return a verdict of guilty in these cases even though she did not believe that the appellants were guilty.
This juror informed the court on Friday, November 6, 1992, that she had plans to leave on a family vacation on the following Sunday. Based on this juror's vacation plans, the court required the jury to deliberate on Saturday rather than resuming deliberations on Monday as was originally planned. When the jury indicated it was deadlocked early Saturday afternoon, the court gave the jury additional instructions and sent the jurors back for further deliberations. Shortly thereafter, the jury returned verdicts of guilty in all three cases. The court polled the jury, and each juror responded that these were his or her verdicts.
In her affidavit, the juror who now contends that she did not agree with the guilty verdicts stated that she felt compelled to agree with the majority of the jurors because of the court's instructions to the jury. She also stated that her prearranged vacation caused her to feel "additionally pressured . . . to render a verdict on . . . Saturday."
A juror cannot impeach his verdict by later explaining why or how the juror arrived at his or her original decision.Walker v. State, 519 So.2d 598 (Ala.Cr.App. 1987). The court correctly refused to consider the juror's affidavit explaining why she agreed to return a verdict of guilty.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who dissents with opinion.