[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 813 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 814 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 815 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 816 
On February 16, 1990, the appellant, Herbert Williams, Jr., was convicted of capital murder for killing Timothy Hasser during the course of a robbery. See § 13A-5-40(a)(2), Ala. Code 1975. By a vote of 9-3, the jury recommended that he be sentenced to imprisonment for life without the possibility of parole. However, the trial court overrode the jury's recommendation and sentenced the appellant to death by electrocution. This court and the Alabama Supreme Court affirmed his conviction and sentence, seeWilliams v. State, 627 So.2d 985 (Ala.Cr.App. 1991), aff'd,627 So.2d 999 (Ala. 1993), and the United States Supreme Court denied the appellant's petition for certiorari review, see Williams v.Alabama, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). The relevant facts of the case are set forth in those opinions. This court issued a certificate of judgment on September 14, 1993.
On October 17, 1994, the appellant, through counsel, filed a Rule 32, Ala.R.Crim.P., petition for post-conviction relief, which he amended twice. The State responded, arguing that the issues the appellant raised either lacked merit or were precluded. After conducting an evidentiary hearing, the circuit court denied the petition. This appeal follows.
The appellant raises numerous issues on appeal, including substantive claims alleging errors at trial and claims that his attorneys rendered ineffective assistance at trial and on appeal. In reviewing the circuit court's denial of the appellant's petition, we apply the following principles.
 "`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129
(Ala.Cr.App. 1992).' Cade v. State, 629 So.2d 38, 41
(Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
 "In addition, '[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App. 1995).
 "To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. . . . "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
 "Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
 "When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, *Page 817 
534 (Ala.Cr.App. 1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.Cr.App. 1987).
 "Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39
(Ala.Cr.App. 1991)."
Hallford v. State, 629 So.2d 6, 8-9 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
 "In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for '[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala.Cr.App. 1987) (footnote omitted).
 "Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir. 1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142
(Ala.Cr.App. 1988); Smith v. Murray, 477 U.S. 527, *Page 818 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala.Cr.App. 1998), cert. denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed.2d 55 (1999).
In its order denying the appellant's petition, the circuit court stated the following with regard to the appellant's ineffective-assistance-of-counsel claims:
 "Having read and heard the many assertions of ineffective assistance of counsel, the court is convinced they are at best second-guessing, and allegations of ineffective counsel without proof fall woefully short of ineffective assistance of counsel. Most, if not all, of the assertions of ineffective assistance can be traced to trial tactic the petitioner, using hindsight, now says is error.
". . . .
 "There are many routes from Mobile to Montgomery and they will all get you there. People will differ or argue over which route is the best. Likewise, there are many different ways to handle the trial of any case in court. Therefore, to simply second-guess what another attorney has or has not done falls woefully short of being ineffective assistance of counsel. . . .
". . . .
 ". . . In this case, the evidence at trial was overwhelming against the defendant-petitioner herein. Therefore, applying the Strickland standard to all of Williams' claims of ineffective assistance of counsel shows that he received effective assistance of counsel.
". . . .
 "Petitioner has failed to prove that his trial or appellate counsel were ineffective. The trial transcript, which the court is very familiar with, and the evidence presented at the Rule 32 hearing, establishes that the Petitioner was represented by very capable attorneys from arraignment to date. That is, the petitioner received very effective representation he was guaranteed by the Constitution. The petitioner was convicted and sentenced to death because of the weight of the evidence against him."
(C.R. 648-53, 690.)
 I.
The appellant's first argument is that the State withheld exculpatory information in violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he contends that the State suppressed evidence that a potential witness had seen the appellant and the victim together in Mobile before the murder and evidence that a white Porsche automobile had been seen at the scene of the crime at about 3:30 p.m. on the day of the murder. The appellant did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.; Boyd v. State, 746 So.2d 364 (Ala.Cr.App. 1999); Matthews v. State, 654 So.2d 66 (Ala.Cr.App. 1994);Lundy v. State, 568 So.2d 399 (Ala.Cr.App. 1990).
Furthermore, the appellant's claim is without merit. In rejecting this claim, the circuit court found as follows:
 "Williams contends that the State failed to disclose information that was potentially exculpatory and that could have been used to impeach key prosecution witnesses. See Claim J of the second amended petition. Williams argues that the State's failure to produce this information violated Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the prosecutor had withheld evidence, a statement by *Page 819 
Brady's co-defendant, which was directly relevant to the extent that Brady was involved in the crime. The Court held that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.' 373 U.S. at 87. Williams introduced three exhibits into evidence at the evidentiary hearing which he contends were in the prosecutor's file and were suppressed. Williams argues the suppression of these handwritten notes contained in the prosecutor's file violated his rights to due process and a fair trial.
 "A Brady violation has three elements: (1) suppression by the prosecution (2) of exculpatory evidence (3) material to the issues at trial or sentencing. Nelson v. Nagle, 995 F.2d 1549, 1555
(11th Cir. 1993). The third element is satisfied `only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' United States v. Bagley, 473 U.S. 667, 682 (1985).
 "Williams offered three handwritten notes that were contained in the file of the Alabama Bureau of Investigation or the file of the District Attorney. Petitioner's Exhibit 3A is a handwritten note that was contained in the file of the Alabama Bureau of Investigation. That handwritten notes states in relevant part:
"`John Nixon
"`5270 Old Highway 43
"`Satsuma, AL 679-0055
"`Saw a White Porsche at the Creola Truck repair
"`Wed Nov 2, 1988
"`3:25 to 3:30 pm'
 "See Petitioner's Exhibit 3A. There is another note in the handwriting of Chris Galanos, the prosecutor that tried this case, that merely references the information contained in Petitioner's Exhibit 3A. That note states in relevant part: `Chief Hammond — John Nixon [emphasis in note] saw car pull in interstate trucking 3:25 to 330.' See Petitioner's Exhibit 5. The other handwritten note that Williams presented was also in the handwriting of Chris Galanos, and it states in relevant part:
 "`Palmer Williams advised by telephone that Luther Ramsey "discovered" scene between (unreadable word) Creole — also advises that Jerry Parker, 1101 Government Street, may have seen V (presumably "V" means victim) and [a triangle] [presumably this symbol stands for the word "defendant"] @ corner of Roper and [an unreadable word but presumably the name of a street][.]'
"See Petitioner's Exhibit 4.
 "The first element of a Brady claim is whether these handwritten notes were suppressed from Williams' trial counsel. Both trial counsel that testified at the Rule 32 evidentiary hearing stated that they had not seen these handwritten notes. However, one of the trial counsel acknowledged that this court had ordered an open file discovery policy. Trial counsel added that he was `not allowed to go to Mr. Galanos' office and go through his file.' Rule 32 transcript at 45. The record of the trial transcript shows that neither trial counsel filed a motion indicating that the prosecutor was in violation of this court's order, see RI at 62, which ordered the prosecutor to have an open file. Therefore, Williams has not established by a preponderance *Page 820 
of the evidence that these handwritten notes were suppressed.
 "Williams failed to prove the second element of a Brady claim that the suppressed evidence was favorable to the defendant or exculpatory. There is clearly nothing in any of the three handwritten notes that is exculpatory to Williams. This court will analyze whether the notes contain information that would have been favorable to Williams. Both trial counsel testified at the Rule 32 evidentiary hearing that the information contained in the notes could have supported the defense's theory that Timothy Hasser and Herbert Williams knew each other and were involved together in the sale of drugs. Petitioner's Exhibit 4, a note in the handwriting of the prosecutor that tried this case, does contain a reference that an individual named Jerry Parker may have seen the victim and the defendant at the intersection of two streets. This handwritten note is not favorable to Williams for several reasons. The handwritten note only indicates that an individual named Jerry Parker may have seen the victim with Williams, not that the two were definitely seen together. Chris Galanos, the author of Petitioner's Exhibit 4, was not called as a witness at the Rule 32 evidentiary hearing, so the origin of the information contained in the note is unknown. It is very possible that this note contains triple or quadruple hearsay. Additionally, regarding Petitioner's Exhibit 4, Williams has not established that any admissible evidence or evidence which may lead to admissible evidence could have been presented. Petitioner's Exhibit 4 can only be admitted in these Rule 32 proceedings for the limited purposes of showing that the note was written by the prosecutor and was contained in his file. Williams did not present any admissible evidence to show that the information contained in this note could have been presented to the jury in some way. Williams also did not present any evidence to show that the police who were investigating this crime had knowledge of any of the information contained in Petitioner's Exhibit 4.
 "The information contained in Petitioner's Exhibits 3A and 5 [is] not favorable to Williams. The two handwritten notes indicate that an individual named John Nixon saw a white Porsche at the Creola Truck Repair around 3:30 in the afternoon preceding the murder which occurred later that night. Petitioner's Exhibit 5 merely indicates that Chris Galanos knew this information. Williams also called John Nixon as a witness at the Rule 32 evidentiary hearing to testify regarding what he saw. None of the information in Petitioner's Exhibits 3A and 5 or in the testimony of Nixon is favorable to Williams. There is nothing in these notes or in Nixon's testimony that establishes that the white sports car he saw on November 2, 1988, was owned by Timothy Hasser. During his testimony at the Rule 32 evidentiary hearing, Nixon was not sure if the make of the car he saw that day was a Porsche. Rule 32 transcript at 90. Nixon testified that `I thought it was a Mazda at the time.' Rule 32 transcript at 89. Additionally, there is nothing in these notes or in Nixon's testimony that links this information with the victim or Williams. Nixon testified that he did not see anybody standing around the car, nor did he see anybody in the car.
 "The State presented a witness at the Rule 32 evidentiary hearing that established the whereabouts of Timothy Hasser from 3:10 to 3:50 in the afternoon preceding his murder that night. Carolyn Hasser, who was Timothy Hasser's sister-in-law, testified that Timothy Hasser *Page 821 
picked up her two children around 3:10 that afternoon and took them to a department store. Rule 32 transcript at 390. Mrs. Hasser stated that Tim was driving his white Porsche that afternoon. Rule 32 transcript at 390. Tim returned to Carolyn Hasser's home around 3:40 that afternoon and visited for about ten minutes before returning to work. Rule 32 transcript at 390. Carolyn Hasser's testimony further establishes that the information contained in Petitioner's Exhibits 3A and 5 and the testimony of John Nixon is not favorable to Williams.
 "Undisclosed evidence is material `only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.' United States v. Bagley, 473 U.S. 667, 682 (1985). Williams has not established that any of these handwritten notes are material. In Petitioner's Exhibit 4, there is a reference that an individual may have seen Hasser and Williams together. There was no evidence presented at the Rule 32 evidentiary hearing to establish this fact. If Williams is arguing that he could have presented this handwritten note to the jury as substantive evidence, then the court flatly rejects such an argument. Williams has presented no evidence to undermine confidence that he received a fair trial. Williams' claim based upon Brady v. Maryland lacks merit."
(C.R. 684-90.) After reviewing the trial transcript and the three notes, we agree with the circuit court's findings and adopt them as part of this opinion. Furthermore, even if we assume that the appellant proved that the State suppressed the notes, he has not established that the notes were material or exculpatory. Accordingly, the appellant is not entitled to relief on this claim.
 II.
The appellant's second argument is that his trial attorneys rendered ineffective assistance because they allegedly did not investigate, prepare, and present critical mitigation testimony to the jury and the trial court. First, he contends that his trial attorneys rendered ineffective assistance because they did not discover mitigating evidence. Specifically, he contends that they should have called his half sister as a witness to testify about the sexual, physical, and psychological violence perpetrated by his father. He further contends that other family members, teachers, and friends could have corroborated this testimony and provided additional information about his upbringing.[1]
Second, the appellant contends that his trial attorneys rendered ineffective assistance because they did not hire a psychiatric or psychological expert to present mitigation evidence to the jury and the trial court. Specifically, he contends that such an expert could have testified about the "permanent psychological damage [he suffered] as a result of his violent, neglectful upbringing" and "[linked his] psychiatric problems to his behavior in the crime with which he was charged." (Appellant's brief at pp. 35, 41.)
In reviewing this claim, we are guided by the following principles. In Daniels v. State, 650 So.2d 544, 568-70
(Ala.Cr.App. 1994), cert. denied, 514 U.S. 1024, 115 S.Ct. 1375,131 L.Ed.2d 230 (1995), we stated the following regarding a *Page 822 
claim that trial counsel had rendered ineffective assistance during the penalty phase of a capital murder trial:
 "In determining whether Haas was ineffective at original sentencing, . . . we recognize that the
 "`two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'
 "Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992) (citation omitted), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). We also recognize that
 "`[w]hile "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.'
 "White v. Singletary, 972 F.2d 1218, 1224 (11th Cir. 1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
 "`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90
(11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'
 "Middleton v. Dugger, 849 F.2d 491, 493
(11th Cir. 1988).
 "Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that `it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant].' *Page 823 
 "Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be `devoted' to the appellant, we cannot fault Haas for failing to discover the appellant's `traumatic' childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's `emotional rejection' of her son played a large part. Compare Bertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir. 1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins, 986 F.2d 1478, 1488-89
(5th Cir. 1993) (although counsel did not `conduct a thorough investigation of [the defendant's] medical, mental, and psychological history,' which would have revealed that the defendant `was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome,' the court observed that the defendant never gave her attorney `any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused.'), rehearing granted, 998 F.2d 253 (5th Cir. 1993); Cantu v. Collins, 967 F.2d 1006, 1016
(5th Cir. 1992) (despite fact that counsel failed to present evidence of defendant's `low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect,' court found that counsel had `thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence,' and the claims were not supported in fact), cert. denied, [509] U.S. [926], 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir. 1992) (although attorney failed to discover or develop mitigating evidence that defendant had a `deprived family background,' and psychological and mental `limitations,' the court observed that `trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired.'), cert. denied, [509] U.S. [921], 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State, 581 So.2d 1216, 1238 (Ala.Cr.App. 1991) (upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
 "We hold that Haas was not ineffective at the original sentencing proceeding."
650 So.2d at 568-70 (emphasis omitted). Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence. "Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983),467 U.S. 1219, *Page 824 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)." Lundy v. State, 568 So.2d 399,403 (Ala.Cr.App. 1990).
 "When a decision to not put on certain mitigating evidence is based on a `strategic choice,' courts have always found no ineffective performance. Moore v. Maggio, 740 F.2d 308 (5th Cir. 1984), cert. denied, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643
(1985); Lowenfield v. Phelps, 817 F.2d 285 (5th Cir. 1987), aff'd, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). No two lawyers would try a case exactly the same way.
 "We cannot say that counsel's performance is deficient because he failed to call more witnesses at the sentencing phase. `The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.' Oliver v. State, 435 So.2d 207, 208
(Ala.Cr.App. 1983). At the hearing on the Rule 32 petition, the appellant's mother, two of his aunts, an uncle, and several old friends offered character testimony. Most of these witnesses did not have contact with the appellant near the time of the murder. There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland
test."
State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App. 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).
 "With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir. 1987), are appropriate:
 "`The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir. 1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "After a sufficient investigation, however, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'" Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir. 1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, "[c]ounsel has no absolute duty to present mitigating character evidence." Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is "accorded a strong presumption of correctness which is `virtually unchallengeable.'" Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir. 1987) and Strickland v. Washington, 466 U.S. 668, 690, *Page 825 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives . . . faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case.'"
Morrison v. State, 551 So.2d 435, 445 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).
 "We find that the holding of Fleming v. Kemp, 748 F.2d 1435, 1452 (11th Cir. 1984), cert. denied, 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
 "`In summary, we are not persuaded by petitioner's argument that . . . [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. "Intrusive post-trial inquiry into attorney performance," such as that which has been required in this case, may "dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Strickland v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally "fair trial" which "produced a just result." Id. at [686], 104 S.Ct. at 2064. There is no reason to set aside petitioner's conviction or his penalty on account of the representation he received.'"
Bell v. State, 518 So.2d 840, 847 (Ala.Cr.App. 1987), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). Finally, the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance.
 "Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. Duren v. State, 590 So.2d 360 (Ala.Crim.App. 1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. Baldwin, Thompson v. State, 581 So.2d 1216 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992)."
Brooks v. State, 695 So.2d 176, 182 (Ala.Cr.App. 1996), aff'd,695 So.2d 184 (Ala.), cert. denied, 522 U.S. 893, 118 S.Ct. 233,139 L.Ed.2d 164 (1997).
The circuit court addressed the appellant's claims in this regard as follows:
 "Williams contends that trial counsel failed to provide him with effective assistance of counsel at the penalty phase of the trial because they failed to adequately investigate and present the evidence that Williams presented at the Rule 32 evidentiary hearing. See paragraphs 16(s)-(z) of the second amended petition. In particular, Williams alleges that trial counsel did not conduct a reasonable investigation into his background and did not obtain an independent mental health expert.
 "Williams' argument lacks merit because the evidence shows that trial counsel consulted with a mental health expert named Dr. Van Rosen and was not *Page 826 
able to use his testimony because it was not favorable to Williams. Additionally, trial counsel investigated Williams' background and presented evidence about the abuse he suffered at the hands of his father. At the penalty phase of the trial, trial counsel argued the presence of two statutory mitigating circumstances. Trial counsel argued that Williams did not have any history of prior criminal activity, Ala. Code § 13A-5-51(1) (1975), and that Williams was 19 years of age at the time of the crime, Ala. Code § 13A-5-51(7) (1975). Based upon the argument of trial counsel, this court found the existence of both of these mitigating circumstances. See RI at 113-14. Trial counsel presented the testimony of Arcola Williams, Williams' mother, who testified that Williams was beaten by his father many times. RII at 277. Mrs. Williams also testified that she was beaten by Herbert Williams, Sr., in the presence of Williams. RII at 279. Mrs. Williams testified that Herbert Williams, Sr., had recently been charged with the rape of their 14-year-old mentally retarded daughter. RII at 280. In the sentencing order, this court found as a non-statutory mitigating circumstance that Herbert Williams, Sr., was violent and abusive towards Williams. RI at 114. Trial counsel's penalty-phase strategy was successful since the jury returned an advisory verdict of life without parole. See RI at 115.
 "In examining whether a defendant in a death penalty case was prejudiced by the failure to present mitigating evidence, `the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.' Strickland, 466 U.S. at 695. `It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' Id. at 693.
 "At the Rule 32 evidentiary hearing, Williams called witnesses in an attempt to show that mitigating evidence regarding physical abuse and neglect was not presented to the jury. Williams contends that trial counsel was constitutionally ineffective for not presenting testimony such as was presented at the Rule 32 evidentiary hearing. This testimony was presented to show that Williams was physically abused by his father as were other members of his family. The Alabama Court of Criminal Appeals has addressed and rejected this type of argument: `There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify.' State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App. 1993).
 "In addition, the evidence regarding Williams' background was never found to have a causal relationship with Williams committing capital murder. In the sentencing order, this court found that Williams `purposely and deliberately planned to enter the home of the victim, Timothy C. Hasser, await his arrival, and steal his automobile, a model 928 Porsche.' RI at 107. This court further stated in the sentencing order that `the events which led to the murder of Timothy Hasser were not the product *Page 827 
of chance; rather, these events were planned and executed with military-like precision.' RI at 108. At trial, there was evidence presented that Williams was obsessed with the automobile owned by Timothy Hasser. Williams carried out his plan to take Hasser's Porsche by abducting the victim at gunpoint and killing him at a remote site and attempting to dispose of the body by throwing it into a river. Any additional testimony offered by Williams at the Rule 32 evidentiary hearing that he was physically abused by his father has little mitigation value due to the fact that this was a deliberately planned crime where the victim was murdered because Williams wanted his car.
 "Williams also contends that trial counsel was constitutionally ineffective for not presenting testimony from a mental health expert at the penalty phase. In making this claim, Williams ignores the fact that, before trial, trial counsel had Williams psychologically evaluated by Dr. Van Rosen, a psychologist. At the Rule 32 evidentiary hearing, James Lackey, one of Williams' trial counsel, testified that Dr. Van Rosen's testimony would not have been helpful:
 "`Q: Does this recall your — do you recall now, reading this, why you didn't use Dr. Van Rosen? Why he was never used by the defense?
"`A: Yes.
"`Q: What reason was that?
 "`A: Well, basically his report indicated that there were no — that other than some borderline problems in intelligence and so on, that there was nothing basically wrong with Mr. Williams and that the testing was — felt was somewhat skewed by a lack of effort or attempt to confuse the tester by Mr. Williams.
"`Q: Okay. Just briefly can you tell us —
 "`A: I didn't think his testimony would be very helpful.
 "`Q: Did you consider using him, his testimony at the penalty phase?
"`A: No.
"`Q: For the same reason?
"`A: For the same reason.'
 "Rule 32 transcript at 53. Trial counsel's testimony shows that Williams was evaluated by a psychologist but that the psychologist did not give trial counsel any helpful evidence to use at the penalty phase. Dr. Karl Kirkland, who was under contract with the State to testify at the Rule 32 evidentiary hearing, commented on Dr. Van Rosen's reputation as a psychologist: '. . . the attorneys involved in this case at that time had access to who I consider to be the best forensic psychologist in South Alabama at that time, Van Rosen, and that they chose not to use his evaluation in this case. And I could understand why they didn't choose to use it.' Rule 32 transcript at 368. This court finds that trial counsel's investigation into presenting expert mental health testimony at the penalty phase was not deficient and was not unreasonable.
 "At the Rule 32 evidentiary hearing, Williams presented the testimony of a psychiatrist from Massachusetts named Dr. Eliott Gelwan. Dr. Gelwan testified that due to the years of chronic abuse Williams had chronic post-traumatic stress disorder. Rule 32 transcript at 271. Dr. Gelwan admitted that, out of the various mental health experts who had evaluated Williams, he was the only one to come up with this type of a diagnosis. Rule 32 transcript at 424. Dr. Kirkland testified at the Rule 32 evidentiary hearing that he disagreed with the diagnosis of post-traumatic *Page 828 
stress disorder because Williams does not meet the criteria contained in the Diagnostic and Statistical Manual of Mental Disorders. Rule 32 transcript at 380. Dr. Van Rosen and Dr. Harry McLaren, who both evaluated Williams soon after the crime, agreed that Williams had an adjustment disorder with depressed features associated with his pending capital murder charges. Rule 32 transcript at 368. The psychologist who evaluated Williams while he was at the Job Corps soon before the crime occurred reported that Williams was depressed. Rule 32 transcript at 425.
 "Williams never made a showing that Dr. Gelwan was a witness who would have been available to trial counsel at a capital murder trial in Mobile, Alabama in 1990. Dr. Gelwan testified at the Rule 32 evidentiary hearing that in 1990 he did not know any lawyers in Alabama and at that point in time he had not testified in court on forensic issues as a psychiatrist. Rule 32 transcript at 326. In addition, Dr. Gelwan testified that he put in 75 hours of work on this case and that in 1990 he would have charged $125 an hour. Rule 32 transcript at 326, 422. With all these facts in mind, this court makes a finding of fact that Williams did not establish that Dr. Gelwan would have been an expert witness available to trial counsel to come and testify in Alabama at a 1990 trial.
 "Further, Dr. Gelwan's findings are dubious at best, considering the information that he relied upon. Dr. Gelwan testified at the Rule [32] evidentiary hearing that he believed everything that Williams had communicated to him:
 "`Q: Do you believe everything that Herbert has told you?
 "`A: One of the expertises that a professional examiner has is to be assessing the veracity of his client or his patient, and I believe that he's been honest with me.
 "`Q: All right. So, you believe everything he told you?
"`A: By and large, yes.'
 "Rule 32 transcript at 329-30. Dr. Gelwan testified extensively about Williams' claims that he was friends with Timothy Hasser. Dr. Gelwan believed that Williams `was taken under wing by Mr. Hasser and developed a relationship with him which was based on some of the strong needs for affiliation and belonging that he (Williams) had that had never been addressed within his own family.' Rule 32 transcript at 297. There was no evidence presented at trial or at these Rule 32 proceedings that supports Williams' claims that he had some kind of relationship with Timothy Hasser that arose because of Williams' allegations that they dealt drugs together. It is hard to accept the credibility of an expert witness who believes everything that Williams told him when it appears that prior psychologists who have evaluated Williams did not. See Rule 32 transcript at 328 (psychologist from Job Center filed a report stating that Williams' `reliability as an informant is questionable'); RVII at 1166 (Dr. McLaren's report indicates that Williams was malingering in an effort to exaggerate psychopathology). Before trial, Williams gave four statements all alleging different variations of the theme that Williams and Hasser were engaged in drug dealing together and that Hasser's death was the result of a drug deal gone awry. In one of the statements, Williams claimed that drug dealers, one of whom was named `Nestor,' conducted a trial and found Timothy Hasser guilty and ordered Williams to execute Hasser, which he did. RVII at 766-67. For Dr. *Page 829 
Gelwan to consider everything that Williams told him to be truthful makes the court wonder about his findings.
 "Weighing the evidence presented by Williams at the evidentiary hearing against the aggravating circumstances that were proven beyond a reasonable doubt at the penalty phase of the trial shows that trial counsel was not constitutionally ineffective. This court found that the State had proved the following aggravating circumstance: (1) the capital offense was committed while the defendant was engaged in the commission of a robbery. See Ala. Code § 13A-5-49(4) (1975). In finding this aggravating circumstance, this court noted the following:
 "`The evidence, as stated previously, proved beyond a reasonable doubt, that defendant was consumed with the notion of owning a Porsche and that obsession was the sole motivation for the robbery/murder of Timothy Hasser.
 "`The court, furthermore, attaches great significance to the calculated precision with which this crime was planned and systematically executed. The defendant's diary manifests a greed and depravity of mind characteristic of an individual who has an utter disregard for human life and the rights and property of others.'
 "RI at 111-12. In a case such as the present one that involves a carefully planned murder of a brutal nature, along with robbery, the Eleventh Circuit Court of Appeals has found that the aggravating circumstances of the crime outweigh any prejudice caused when a trial counsel fails to present additional mitigating evidence. See, e.g., Francis v. Dugger, 908 F.2d 696, 703-04 (11th Cir. 1990) (finding that `evidence of a deprived and abusive childhood [was] entitled to little, if any, mitigating weight,' in a case concerning a deliberately planned torture murder); Thompson v. Wainwright, 787 F.2d 1447, 1453 (11th Cir. 1986) (holding that `evidence of a difficult youth, an unsavory defendant, and limited mental capacity would [not] have altered this jury's decision,' in a case involving a rape and brutal torture murder). In light of the gravity of the aggravating circumstance proven beyond a reasonable doubt in this case and the relative non-compelling nature of the mitigating evidence that Williams alleges that trial counsel should have presented, the presentation of this evidence would not have resulted in this court passing down a sentence other than death. There is no reasonable probability that the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant a death sentence. Therefore, Williams was not prejudiced by trial counsel's failure to present the evidence that was presented at the Rule 32 evidentiary hearing, even if it had been available to him."
(C.R. 673-81.) We agree with the circuit court's findings and adopt them as part of this opinion. For these reasons, the appellant is not entitled to relief on this claim.
 III.
The appellant's third argument is that his trial attorneys rendered ineffective assistance during the hearing on his motion to suppress a statement he made to law enforcement officers. Specifically, he contends that counsel should have presented the testimony of his mother and/or father to show that the officers violated Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880,68 L.Ed.2d 378 (1981), by reinitiating questioning after he had invoked his right to counsel; that the officers violated RhodeIsland v. Innis, 446 U.S. 291, *Page 830 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), by using psychological ploys to elicit an incriminating response from him; and that, under the totality of the circumstances, he did not voluntarily give the statement. In rejecting this contention, the circuit court found as follows:
 "Williams contends that trial counsel did not provide adequate representation by not calling witnesses `who could have testified in support of the theory that the police improperly reinitiated the interrogation of Mr. Williams after he had invoked his right to counsel.' See paragraph 16(c) of the second amended petition. Williams' allegation does not point out that, before Williams had invoked his right to counsel, he had already given two inculpatory statements to the police. Williams gave one of the inculpatory statements to Mark Harrell, a patrol officer with the Jackson Police Department, and the other to Charles Burge, the Assistant Chief of the Jackson Police Department.
 "At the Rule 32 evidentiary hearing, Williams presented the testimony of Arcola Williams, his mother, to support this claim. Arcola Williams testified that she, along with Herbert Williams, Sr., went to see Williams the day after he was arrested. Arcola Williams stated that, before she saw her son, the police talked to her. Rule 32 transcript at 203, 232. Arcola Williams testified that:
 "`A: They [the police] both took a side and they was talking with us and they asked us, they said, now he's going to be in a lot of trouble, and they asked us were we prepared to pay for a lawyer. It was going to cost us about — they said 25 or 30 or maybe it could go up to 50 thousand dollars or more. Were we prepared to pay that kind of money for a lawyer. Well, not —
 "`Q: What did they say would happen if you weren't prepared to pay for a lawyer?
 "`A: Well, they told us they could help him if we — if he would talk, but they couldn't get him to talk. So, they encouraged us, they said — encouraged us to get him to talk to — talk to them and tell them what happened, because they couldn't help him if he didn't.
 "`Q: Did they also — what else did they ask you to do, if anything, when you went in to see [Williams]?
 "`A: Well, they told us we could go back there and talk to him, but encourage him to talk to them because they couldn't get nothing out of him, they couldn't get him to talk, and, like I said, they told us that they could help him if he talked — it would be to his best interest or they could help him if he would talk, but if he couldn't talk, there wasn't nothing they could do for him.'
 "Rule 32 transcript at 203-04. Williams made no showing regarding whether trial counsel knew any of this information. Mrs. Williams was not asked whether she communicated any of this information to trial counsel. Likewise, neither one of Williams' trial counsel were asked if they knew anything about Mrs. Williams' allegations.
 "There are at least two allegations made by Mrs. Williams in her Rule 32 testimony that conflict with the evidence presented at trial. First, the allegation that the police told Mrs. Williams that `they couldn't get nothing out of [Williams]' is not supported by the facts. At the time that Mrs. Williams saw Williams at the police station he had already given the police two inculpatory statements. Mrs. Williams seems to be asserting that the police needed help in *Page 831 
getting Williams to talk when, in fact, he had already given two statements. Second, Mrs. Williams indicates that the police talked to her and her husband when they entered the police station and before Williams' parents talked to him. Rule 32 transcript at 203, 232. The testimony of Mike Barnett, an investigator with the Alabama Bureau of Investigation who took the third statement, given at the hearing on the motion to suppress, indicates that Williams' parents talked to Williams before they talked to the police:
 "`They basically wanted to know what — why he was in jail and what happened, some of the circumstances about why he was in jail, and I told them that he was driving a car that had a dead body in it and that the car was registered to the person that was dead and there was some things taken from his residence that led us to believe that he in fact committed a murder, and Mr. Williams said that he had talked to Herbert and that Herbert had told him a — you know, basically his side of the story, which was that he had known Mr. Hasser for a couple of years and that he and Mr. Hasser had had some drug dealings and that the death of Mr. Hasser was the result of a bad drug deal. I told Mr. Williams that, you know, that might be so, I didn't know, but there was other evidence in the investigation that would point in another direction, and he wanted to know if — you know, if I was going to talk to Mr. Williams and I told him, no, that I could not talk to him because he had requested an attorney. I said, the only way that I can talk to him is if he requests, it would have to be his request that one of the police officers come and talk to him, and Mr. and Mrs. Williams went back and talked to Herbert and they came back and said — related to me that he wanted to make a statement. So, I got the police dispatcher or the jailer there to get Herbert out of jail and bring him to Charles Burge's office and we sat down and I talked to Herbert and asked him, you know, his name and everything and advised him of his rights."
 "RV at 335-36. In response to this information, Barnett met with Williams; he advised Williams of his Miranda rights and ascertained that Williams understood those rights and that, notwithstanding his earlier request for an attorney, he initiated the meeting with Barnett and wanted to speak with him. RV at 338-39. Williams signed a waiver of rights form and wrote on the form a statement to show that he initiated the contact with the police on November 4, 1988. RV at 338-39. The statement that Williams wrote on the waiver of rights is as follows: `I requested to talk to the police officer today, Nov. 4, 1988. They advised me of my rights and I understand them. HW. 2:18 p.m.' RVIII at 1124.
 "The Rule 32 testimony of Mrs. Williams, had it been presented at the hearing on the motion to suppress, would not have changed the outcome of the trial. Therefore, trial counsel cannot be ineffective for not presenting such evidence. Additionally, there has been no evidence presented that trial counsel did not investigate for evidence of this type, or that any of this information was communicated to trial counsel. There has not been sufficient evidence presented to undermine confidence in the fact that Williams reinitiated contact with the police. `Initiation' is defined as an inquiry that can be `fairly said to represent a desire on the part of the accused to open up a more generalized *Page 832 
discussion relating directly or indirectly to the investigation.' Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983). Once a defendant initiates contact with the police after invoking his right to counsel, he must knowingly and voluntarily waive his Miranda
rights or any resulting confession will be inadmissible. Edwards v. Arizona, 451 U.S. 477, 486 n. 9 (1981). At the hearing on the motion to suppress, the State established that Williams initiated contact with Barnett, and that he knowingly and voluntarily waived his rights before giving his statement to Barnett. In evaluating all of the evidence presented, there is not sufficient evidence to indicate that there was any State action before Williams reinitiated contact with the police and gave his third statement.
 "Williams has not shown that trial counsel's performance was outside `the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689. There is no reasonable probability that, if trial counsel had presented Mrs. Williams' testimony, the result of the decision on the motion to suppress the third statement would have been different."
(C.R. 656-62.) The records of the trial and the Rule 32 proceedings support the circuit court's findings. Accordingly, we adopt these findings as part of this opinion and conclude that the appellant's attorneys did not render ineffective assistance in this regard.
 IV.
The appellant's fourth argument is that the State withheld evidence and presented false testimony about the actions of law enforcement officers in obtaining an inculpatory statement from him. He bases his argument on his contention as set forth in Part III of this opinion. However, the circuit court specifically found that "there [was] not sufficient evidence to indicate that there was any State action before Williams reinitiated contact with the police and gave his third statement." (C.R. 661-62.) Because the appellant has not presented sufficient evidence to support his allegations, he is not entitled to relief on this ground. See Rule 32.3 and 32.6(b), Ala.R.Crim.P.
 V.
The appellant's fifth argument is that his trial attorneys rendered ineffective assistance during the voir dire proceedings. First, he contends that his attorneys did not engage in probing voir dire of four veniremembers who expressed some opposition to the death penalty and that, in fact, they "made no attempt to rehabilitate those jurors, but merely objected to their excusal for cause." (Appellant's brief at p. 58.) He further asserts that they should have attempted to rehabilitate those veniremembers so the State would have been required to use peremptory challenges to remove them from the venire. In denying relief on this claim, the circuit court found:
 "At the evidentiary hearing, Williams presented no evidence to support his claim.
 "In not presenting any evidence to support his conclusory allegations, Williams fails to meet the burden of proof required by Rule 32.3 of the Alabama Rules of Criminal Procedure. Additionally, Williams has not shown that trial counsel's performance was outside `the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689."
(C.R. 662.) We agree with the circuit court's findings and adopt them as part of this opinion. *Page 833 
Furthermore, contrary to the appellant's assertion, the record of his trial shows that his attorneys did indeed question and attempt to rehabilitate each of the four veniremembers to whom the appellant refers in his brief on appeal. (R. 149-52, 158-59, 165-69.) However, the trial court properly excused those veniremembers for cause because each stated that he or she would not vote to impose the death penalty under any circumstances. See
§ 12-16-152, Ala. Code 1975. Accordingly, the appellant's argument is refuted by the record and is without merit.
Second, the appellant contends that his attorneys did not adequately question or challenge for cause veniremembers who expressed bias against him or in favor of the prosecution. He asserts that four veniremembers stated during voir dire examination that they believed from what they had learned through media coverage of the case that the victim's automobile had been stolen. He concludes that his attorneys rendered ineffective assistance because they "did not further question these jurors to discover the extent or depth of their bias in favor of the prosecution." (Appellant's brief at p. 59.) The circuit court made the following findings concerning this contention:
 "At the evidentiary hearing, Williams presented no evidence to support this claim.
 "In not making any argument or presenting any evidence to support his conclusory allegations, Williams fails to meet the burden of proof required by Rule 32.3 of the Alabama Rules of Criminal Procedure. Additionally, Williams has not shown that trial counsel's performance was outside `the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689. There has been no showing made that, if trial counsel had asked more questions during voir dire, the result of the trial would have been different. Strickland, 466 U.S. at 694."
(C.R. 663.) We agree with the circuit court's findings and adopt them as part of this opinion.
Additionally, again contrary to the appellant's assertion, the record of the appellant's trial shows that his attorneys did indeed question each of the four veniremembers about any potential bias they might have had in favor of the prosecution or against him. Upon further questioning, each veniremember stated that she could set aside what she had heard about the case and decide the case based solely on the evidence presented from the witness stand. (R. 209-12, 216-19, 242-47, 251-55.) Therefore, the appellant's argument is refuted by the record and is without merit.
 VI.
The appellant's sixth argument is that his trial attorneys rendered ineffective assistance because they did not object to numerous instances of what he contends was egregious prosecutorial misconduct that occurred during the State's closing arguments. Specifically, he contends that his attorneys should have objected because the prosecutor allegedly improperly relied on facts not in evidence,[2] diminished the presumption of innocence to which he was *Page 834 
entitled,[3] and referred to the Bible and the will of God.
 "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256
(Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App. 1980), cert. denied, 404 So.2d 100 (Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982)."
Bankhead v. State, 585 So.2d 97, 106-07 (Ala.Cr.App. 1989), aff'd in relevant part, 585 So.2d 112 (Ala. 1991), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993). Furthermore,
 "`[d]uring closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Cr.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973). `In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, . . . each case must be judged on its own merits,' Hooks v. State, 534 So.2d 329, 354 (Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (citations omitted) (quoting Barnett v. State, 52 Ala. App. 260, 264, 291 So.2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial, Duren v. State, 590 So.2d 360 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991). `In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.' Mitchell v. State, 480 So.2d 1254, 1257-58 (Ala.Cr.App. 1985) (citations omitted). `To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted.' Twilley v. State, 472 So.2d 1130, 1139
(Ala.Cr.App. 1985) (citations omitted)."
Coral v. State, 628 So.2d 954, 985 (Ala.Cr.App. 1992), aff'd,628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012,114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). Finally, during the trial, the trial court repeatedly instructed the jury that statements made by the attorneys were not evidence, that the jury should base its decision on the evidence presented, and that the jury was not to make its decision based on passion, prejudice, or any other arbitrary factor. We presume that the jury followed the trial court's instructions. See Taylor v. State, 666 So.2d 36
(Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied,516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).
In its order denying the appellant's petition, the circuit court addressed the appellant's prosecutorial-misconduct claims as follows: *Page 835 
 "Williams contends that trial counsel was constitutionally ineffective for not objecting to various parts of the prosecutor's closing argument at the guilt and penalty phases of the trial. At the evidentiary hearing, Williams presented no evidence to support this claim. Williams called both trial counsel as witnesses, but neither one was asked about their failure to object to any part of the prosecutor's closing argument.
 "The jury was instructed that they were the sole triers of the facts and they were to determine the facts. RIII at 239. The jury was also told that during closing argument the attorneys for both parties may `draw inferences and conclusions from the facts as they remember those facts to be.' RIII at 239. This court further instructed the jury:
 "`In determining what the true facts are in this case, ladies and gentlemen of the jury, you are limited to the evidence as presented from the witness stand and the exhibits which have been marked into evidence. What the lawyers have told you or have said in this case is not evidence. And should not be considered by you as such. It occupies a special category. And that category is like the indictment. Again, it is not evidence.
 "`They have a right and a duty, as I said earlier at the appropriate time throughout the trial to argue the evidence as they remember it coming from the witness stand. However, again, the final arbiter and decision as to what evidence is to be is what you remember it to be. Not what the lawyers say they remember it to be.'
 "RIII at 249-50. This instruction was sufficient to safeguard Williams' rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974).
 "Williams has not shown that the failure to object to any of the prosecutor's allegedly improper arguments changed the outcome of the proceeding. There is no reasonable probability that the outcome of the proceedings would have been different if these arguments had not occurred. There was overwhelming evidence against Williams, including his own inculpatory statements. Given the evidence against Williams, there is no reasonable probability that these arguments infected the entire trial.
 "Williams contends that the prosecutor improperly referred to him as a predator and stated that Timothy Hasser did not have a right to counsel. See paragraph 16(k) of the second amended petition. During his closing argument, the prosecutor stated in relevant part:
 "`The law has meticulously preserved the precious constitutional rights of Herbert Williams, Jr., as it should, for this is the United States of America. Timothy Hasser did not have the right to counsel. Timothy Hasser did not have the right to a trial by a jury of his peers. Timothy Hasser indeed did not have the right to live, to love, to be loved, to become all that God would let him be because Herbert Williams, Jr., chose on November the 2nd on the side of that warehouse in Creola, Alabama, to be his judge, his jury, and his [executioner]. And, for that, he must pay.
 "`So when you decide this case, I respectfully ask you to decide it on the facts. That which is crooked cannot be made straight. And that which is wanting cannot be numbered. He's caught at the scene with the body. He ties weights around the body to get rid of the body. Then he tells these stories. It was a dope deal gone bad in Demopolis and he was *Page 836 
killed while running away from the dopedealers. It was a dope deal gone bad in Demopolis. But this time he was forced to lie down and he was shot. And then finally it was a dope deal that went down in Creola and I shot him. But I did it because the phantom Nester made me do it.'
 "RIII at 235-36. There was nothing improper in the above-cited argument. The prosecutor apparently was responding to trial counsel's argument that Williams was badgered by the police in giving his various statements and contrasting that with this horrible crime.
 "Williams contends that trial counsel was ineffective for not objecting to the prosecutor's statement that an innocent man would not have made as many statements as had Williams. See paragraph 16(l) of the second amended petition. The prosecutor's comment was a reasonable inference from the evidence wherein Williams made four statements that alleged different facts. Ward v. State, 440 So.2d 1227, 1230
(Ala.Crim.App. 1983). Williams has not shown that, if trial counsel had objected to this statement, the result of the trial would have been different.
 "Williams next contends that trial counsel should have objected to the prosecutor's references to the Bible. See paragraph 16(m) of the second amended petition. The references to the Bible in no way asked the jury to consider this case on anything but the evidence and the law given by the court. Williams has not shown that, if trial counsel had made an objection to any of such references to the Bible, the result of the trial would have been different.
 "Williams contends that trial counsel was ineffective for not objecting to the prosecutor arguing that Williams did not have any white friends and that Timothy Hasser did not have any black friends. See paragraph 16(n) of the second amended petition. Darrell Powell, one of the witnesses called by the State, stated that Williams did not have any white friends. RVI at 570. This testimony was presented in rebuttal to Williams' claims in his various statements that he and Timothy Hasser were friends. The prosecutor was merely commenting on the evidence and trial counsel was not ineffective for not objecting to the statement. In fact, there is no legal basis for such objection under the facts in this case.
 "Williams contends that trial counsel was ineffective for not objecting to the prosecutor's comments made at the sentencing hearing before this court on how long it took to bring Williams' case to trial. See paragraph 16(o) of the second amended petition. Actually, the prosecutor was referring to how much time had passed since the murder and was not commenting on how long it had taken for the case to be brought to trial. The comments of the prosecutor on how many days had passed since the murder had no impact on the sentence. There is no reasonable probability that, if trial counsel had objected to the above-cited passages from the prosecutor's closing argument, the result of the trial would have been different."
(C.R. 666-70.) The records of the trial and the Rule 32 proceedings support the circuit court's findings. Therefore, we adopt them as part of this opinion. Accordingly, because the appellant has not shown that his attorneys rendered ineffective assistance in this regard, he is not entitled to relief on these grounds.
 VII.
The appellant's seventh argument is that his trial attorneys rendered ineffective assistance because they did not object to *Page 837 
allegedly improper jury instructions given during the guilt phase of his trial.
 A.
First, the appellant contends that his attorneys should have objected to the trial court's instruction on reasonable doubt. Specifically, he challenges the portion of the instruction that stated, "In order to justify an acquittal, you must have an actual and substantial doubt and not a mere possible doubt" (T.R. 242), arguing that it shifted the burden of proof to him and increased the threshold the jury must reach before finding that a reasonable doubt existed. However, we addressed and rejected this challenge to the trial court's reasonable doubt instruction on direct appeal. See Williams, 627 So.2d at 991-92. Therefore, because the appellant's claim about the trial court's reasonable doubt instruction is without merit, his ineffective-assistance-of-counsel claim based on his attorneys' failure to object to the instruction is likewise without merit.
 B.
Second, the appellant contends that his attorneys should have objected to the trial court's instructions on the voluntariness and admissibility of his confessions. Specifically, he asserts that the instructions were confusing and misleading and improperly encouraged the jury to give great weight to his statements. The trial court instructed the jury regarding confessions as follows:
 "Also in this particular case, ladies and gentlemen of the jury, you have heard testimony concerning certain confessions or what purport to be confessions. A confession is an admission or statement against interest made by the Defendant relative to the offense here charged. The law in this respect is that all confessions are presumed to be involuntary unless they are first shown to have been voluntarily made. That is, the confession was made by the Defendant freely and voluntarily and without any threat or fear or the offer or hope of reward or otherwise. And the burden is first upon the court to determine such questions for the purpose of admitting or refusing its admission into evidence in the case.
 "In this connection, the burden is on the State to satisfy you, the jury, beyond a reasonable doubt that the confession or statement against interest of the Defendant was a voluntary statement and was given by him without fear of punishment or hope of reward on the part of those who had him in custody at the time of the alleged giving and making of such statements.
 "The alleged confessions of the Defendant or statements against interest made by the Defendant, as you are aware, have been allowed into evidence by the court. And the same is before you as part of the evidence in this case. However, the jury is not bound by the alleged confessions of the Defendant. Though I would tell you that confessions of guilt when freely and deliberately made are among the most effectual and satisfactory proofs that can be received in courts of law.
 "And although the court has allowed the confessions to come in, whatever you the jury determine to be [the] truth, if you are nevertheless satisfied that they were obtained unlawfully or by wrongful means such as threat or fear of punishment or hope of reward or anything like that, then you have a right to disregard such a confession. And, in such event, you would then look to all the other evidence in this case to see if there is sufficient evidence apart from the confessions whereby you're convinced beyond *Page 838 
a reasonable doubt the guilt of the Defendant because, again, it must be from the evidence believed by you that establishes the guilt of the Defendant beyond a reasonable doubt before you can convict this Defendant of anything."
(T.R. 254-55.)
In its order denying the appellant's petition, the circuit court addressed this claim as follows:
 "Williams' petition makes no argument regarding how these instructions were confusing and misleading. Williams presented no evidence at the evidentiary hearing to prove this claim.
 "In not making any argument or presenting any evidence to support his conclusory allegations, Williams fails to meet the burden of proof required by Rule 32.3 of the Alabama Rules of Criminal Procedure. Additionally, Williams has not shown that trial counsel's performance was outside `the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689. There is no reasonable probability that, if trial counsel had objected to certain parts of this court's instructions to the jury, the result of the trial would have been different."
(C.R. 672.)
 "A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case. Raper v. State, 584 So.2d 544 (Ala.Cr.App. 1991). A trial court's oral charge to the jury must be construed as a whole, and must be given a reasonable — not a strained — construction. King v. State, 595 So.2d 539 (Ala.Cr.App. 1991); Kennedy v. State, 472 So.2d 1092 (Ala.Cr.App. 1984)."
Williams v. State, 710 So.2d 1276, 1305 (Ala.Cr.App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997), cert. denied, 524 U.S. 929,118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). After reviewing all of the trial court's instructions regarding confessions in the context of its entire oral charge, we conclude that they were not improper. They did not inform the jury that the trial court had determined that the appellant voluntarily made the statements, and they clearly instructed the jury that it was ultimately responsible for determining whether the appellant voluntarily made the statements.See Bush v. State, 523 So.2d 538 (Ala.Cr.App. 1988); Ex parteSingleton, 465 So.2d 443 (Ala. 1985). Because the instructions accurately reflected the law and the facts of the case, there was not a basis for an objection by counsel in this regard. Therefore, his trial attorneys did not render ineffective assistance by not objecting to these instructions.
 VIII.
The appellant's eighth argument is that his trial attorneys rendered ineffective assistance because they did not object to the trial court's decision to override the jury's recommendation that he be sentenced to imprisonment for life without the possibility of parole. On direct appeal to this court, the appellant argued that the trial court had erred in overriding the jury's recommendation. However, we rejected his argument, stating that Alabama's death penalty statute allows the trial court to override the jury's recommendation if the aggravating circumstances outweigh the mitigating circumstances. See Williams, 627 So.2d at 992. Furthermore, the circuit court addressed this claim as follows:
 "Williams contends that trial counsel `failed to object adequately to the impropriety of the trial court's rejecting the jury's life verdict in this case.' See paragraph 16(bb) of the second amended petition. Williams' petition contains no *Page 839 
further argument to support this claim. At the Rule 32 evidentiary hearing, Williams presented no evidence to prove this claim.
 "Alabama law places capital sentencing authority in the trial judge, but requires the judge to strongly consider an advisory jury verdict. Ala. Code § 13A-5-47(e) (1975). The United States Supreme Court has held that this statute, which does not define the weight a sentencing judge must give to an advisory jury verdict, does not violate the Constitution. Harris v. Alabama, 115 S.Ct. 1031, 1037 (1995). Trial counsel cannot be ineffective for [not] making an argument that the United States Supreme Court has rejected. In addition, the trial court, following the dictates of Furman v. Georgia, 408 U.S. 230 (1972), must make sure the sentencing of all cases be evenly applied. The facts of this case demanded that the sentence be death."
(C.R. 682-83.) For the above-stated reasons, the appellant has not shown that his trial attorneys rendered ineffective assistance by not objecting to the trial court's decision to override the jury's sentencing recommendation.
 IX.
The appellant's ninth argument is that his appellate attorneys rendered ineffective assistance because they did not raise numerous allegedly meritorious issues in their brief to this court. In this regard, he alleges: "Under Alabama's plain error rule, even errors that were not preserved at trial must be reviewed by the appellate courts in death penalty cases. Thus, appellate counsel could have raised numerous issues even if they were not raised at trial. The failure to do so prejudiced Mr. Williams by precluding appellate review of meritorious claims that would have required reversal." (Appellant's brief at p. 67-68.) Thereafter, he refers to a list of allegedly meritorious claims he presented in his petition.
Initially, we note that Rule 45A, Ala.R.App.P., provides as follows:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Therefore, on direct appeal, as required by Rule 45A, "[w]e . . . searched the record for any error which would have adversely affected the appellant's substantial rights and . . . found none."Williams, 627 So.2d at 994. Accordingly, contrary to the appellant's contention, the fact that his appellate attorneys did not raise certain issues on appeal did not preclude this court from searching the record for any error that would have required reversal. Furthermore, the circuit court addressed this claim as follows:
 "Williams contends that his appellate counsel was constitutionally ineffective for not raising `a number of meritorious claims in his appeals to the Alabama Court of Criminal Appeals and the Alabama Supreme Court.' See paragraph 17 of the second amended petition. Williams then lists many of the claims of ineffective assistance of trial counsel as examples of the `meritorious claims' that should have been raised on appeal. See paragraph 17(a)-23 of the second amended petition.
 "On direct appeal, Williams was represented by Al Pennington and Greg Hughes. Both of these appellate lawyers *Page 840 
raised numerous issues that were addressed by both Alabama appellate courts. Neither of these counsel were called as witnesses by Williams at the Rule 32 evidentiary hearing. Therefore, it is unknown if these counsel did not raise certain issues in an effort to winnow out any weaker issues. Furthermore, counsel does not have a duty to raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745 (1983). Williams has not alleged any facts or offered any evidence to support his conclusion that appellate counsel was constitutionally ineffective. This claim is denied because it lacks merit."
(C.R. 683-84.) We agree with the circuit court's findings and adopt them as part of this opinion. Additionally, we note that, although he lists several issues that he contends were meritorious and would have required reversal if his attorneys had raised them on direct appeal, the appellant has not satisfied his burden of proving that his attorneys rendered ineffective assistance by not raising them and has not shown that he was prejudiced thereby. We have reviewed the allegedly meritorious issues that the appellant contends appellate counsel should have raised on appeal, and we conclude that there was no error, plain or preserved, with regard to those issues. Therefore, the appellant has not satisfied his burden of proving that his appellate attorneys rendered ineffective assistance by not raising those issues on appeal.
 X.
The appellant's tenth argument is that the trial court erred in denying his request to be treated as a youthful offender. This claim is procedurally barred because the appellant could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.
 XI.
The appellant's eleventh argument is that, in several instances, the trial court improperly limited his attorneys' ability to conduct a thorough voir dire examination. This claim is procedurally barred because the appellant either did object or could have objected to each of these instances at trial and could have raised this argument on direct appeal, but did not. See Rule 32.2(a)(2), (a)(3), and (a)(5), Ala.R.Crim.P.
 XII.
The appellant's twelfth argument is that the trial court improperly refused to allow his attorneys to pose additional questions to veniremembers who expressed some opposition to the death penalty, in violation of Witherspoon v. Illinois,391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). As the circuit court found, this claim is procedurally barred because the appellant could have raised it at trial and on direct appeal, but did not.See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. Furthermore, for the reasons stated in Part V of this opinion, this argument is without merit.
 XIII.
The appellant's thirteenth argument is that the trial court improperly refused to excuse for cause veniremembers who expressed bias against him, thus causing him to use peremptory challenges to remove them from the venire. With respect to veniremember D. B., this claim is procedurally barred because the appellant objected on this ground at trial (R. 211-12) and could have objected on this ground on direct appeal, but did not. See Rule 32.2(a)(2) and (a)(5), Ala.R.Crim.P. With respect to the remaining veniremembers, this claim is procedurally barred because the appellant could have raised it at trial *Page 841 
and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. Additionally, for the reasons stated in Part V of this opinion, this argument is without merit.
 XIV.
The appellant's fourteenth argument is that, for several reasons, the trial court improperly denied his motion to suppress evidence seized during a search of his grandmother's residence. At trial, he challenged the search of the residence on some of the grounds he now raises. Therefore, these claims are procedurally barred because the appellant either did raise or could have raised them at trial and because he could have raised them on direct appeal, but did not. See Rule 32.2(a)(2), (a)(3), and (a)(5), Ala.R.Crim.P.
 XV.
The appellant's fifteenth argument is that the trial court improperly admitted into evidence several photographs that he contends were inflammatory and highly prejudicial. At trial and on direct appeal, the appellant objected to the admission of only one of the photographs. (R. 411); Williams, 627 So.2d at 996. Therefore, the appellant's claim is procedurally barred because he either raised it at trial and on direct appeal or could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(2), (a)(3), (a)(4), and (a)(5), Ala.R.Crim.P.
 XVI.
The appellant's sixteenth argument is that the trial court improperly ordered him to give hair samples to the State, thus allegedly violating his right against self-incrimination. This claim is procedurally barred because the appellant could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.
 XVII.
The appellant's seventeenth argument is that "[t]he extremely low funding provided for indigent defense by the State of Alabama deprived [him] of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, the Alabama Constitution, and Alabama law." (Appellant's brief at p. 77.) To the extent that this argument constitutes a challenge to the statutory limit on attorney's fees in capital cases, it is procedurally barred because the appellant could have raised it at trial and on appeal, but did not. See
Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. Furthermore, Alabama courts have repeatedly held that caps on attorney's fees for indigent defendants do not violate the separation of powers doctrine, do not constitute a taking without just compensation, do not deprive indigent capital defendants of the effective assistance of counsel, and do not deny equal protection. See Exparte Smith, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957,118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Ex parte Grayson, 479 So.2d 76
(Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189,88 L.Ed.2d 157 (1985); Sparks v. Parker, 368 So.2d 528 (Ala. 1979), appeal dismissed, 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979); Boydv. State, 715 So.2d 825 (Ala.Cr.App. 1997), aff'd, 715 So.2d 852
(Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 143 L.Ed.2d 338
(1998); Slaton v. State, 680 So.2d 879 (Ala.Cr.App. 1995), aff'd, 680 So.2d 909 (Ala. 1996), cert. denied, 519 U.S. 1079,117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Barbour v. State, 673 So.2d 461
(Ala.Cr.App. 1994), aff'd, 673 So.2d 473 (Ala. 1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996);Johnson v. State, 620 So.2d 679 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala. 1993), cert. denied,510 U.S. 905, *Page 842 114 S.Ct. 285, 126 L.Ed.2d 235 (1993); Smith v. State,581 So.2d 497 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531
(Ala. 1991).
Additionally, to the extent this is an ineffective-assistance-of-counsel claim, it is without merit. As set forth above, the circuit court found that the appellant's attorneys rendered effective assistance at trial and on direct appeal. The records of the appellant's trial and the Rule 32 proceedings support those findings. Therefore, the appellant has not satisfied his burden of proof under Strickland or Rule 32.3 and 32.6(b), Ala.R.Crim.P., and he is not entitled to relief on this claim.
For the above-stated reasons, the circuit court properly denied the appellant's Rule 32 petition. Accordingly, we affirm the circuit court's judgment.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and FRY, JJ., concur.
[1] In a footnote, the appellant contends that the circuit court erred in not admitting an affidavit from his grandmother, Evelyn Eaton, into evidence during the Rule 32 proceedings. However, we have reviewed the affidavit and conclude that it would not have made a difference in the outcome of this case. Therefore, error, if any, in the circuit court's refusal to admit the affidavit into evidence was harmless. See Rule 45, Ala.R.App.P.
[2] In support of this contention, he cites the prosecutor's comment that the appellant did not have any white friends and the victim did not have any black friends, the comment that the appellant was a "predator" who now had more "rights" than the victim, and the comment that the appellant would not have made as many statements to the police as he did if he were innocent.
[3] In support of this contention, the appellant again cites the prosecutor's comment that an innocent man would not have made as many statements as the appellant made.